BENJAMIN B. WAGNER
United States Attorney
KEVIN P. ROONEY
ELANA S. LANDAU
Assistant United States Attorneys
4401 Federal Building
2500 Tulare Street
Fresno, CA 93721
Telephone: (559) 447-4000

THOMAS E. PEREZ
Assistant Attorney General
BENJAMIN J. HAWK
Trial Attorney
U.S. Department of Justice
Civil Rights Division, Criminal Section
601 D Street NW
Washington, DC 20004
Telephone: (202) 514-3204

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR. No. 1:10-cr-417-AWI |
| Plaintiff, | GOVERNMENT'S MOTION TO DISQUALIFY DEFENSE COUNSEL |
| v. | |
| CHRISTOPHER COLEMAN, PAUL VAN DALEN, SEAN PLYMALE, and MICHAEL MANFREDI, | |
| Defendants. | |

The United States of America, by and through its undersigned counsel, hereby moves to disqualify Paul Q. Goyette, Esq., current counsel for defendant Christopher Coleman and former counsel for defendant Paul Van Dalen. Counsel's successive representation of these defendants creates serious actual and

potential conflicts of interest that affect the integrity of these proceedings and undermine the defendants' right to a fair trial.

I. INTRODUCTION

    A. INDICTMENT AND CURRENT PROCEEDINGS

On October 7, 2010, a federal grand jury sitting in Fresno, California, returned a nine-count indictment charging the defendants – Fresno Police Department (FPD) Officers Christopher Coleman, Paul Van Dalen, and Sean Plymale and FPD Sergeant Michael Manfredi – with violating federal civil rights and obstruction of justice laws for their participation in the violent assault of R.C. on October 10, 2005, and subsequent concerted efforts to conceal and coverup that assault.

Specifically, Count One of the Indictment charges Christopher Coleman with violating 18 U.S.C. § 242 (Deprivation of Rights Under Color of Law) by using a 12-gauge shotgun to repeatedly shoot R.C. with less-lethal ammunition for no legitimate law enforcement purpose. Count Two charges Coleman with violating § 242 by driving a speeding vehicle at R.C., without legal justification, to terrorize R.C. and threaten R.C. with death or serious bodily injury. Count Three charges Paul Van Dalen with repeatedly kicking R.C. and stepping on R.C.'s wounded leg for no legitimate law enforcement purpose. Counts Four and Five charge Sean Plymale and Michael Manfredi, respectively, with violating 18 U.S.C. § 4 (Misprision of a Felony) by concealing the assault of R.C. and failing to report it to federal law enforcement authorities. The remaining four

counts charge each of the defendants with violating 18 U.S.C. § 1519 (Obstruction of Justice) by falsifying an official report in order to impede, obstruct, and influence an investigation of the assault of R.C.

On October 25, 2010, Paul Q. Goyette, Esq., entered his appearance as an attorney of record on behalf of Christopher Coleman. At this time, no attorney has entered an appearance as an attorney of record on behalf of Paul Van Dalen.

B.  PRIOR PROCEEDINGS

Following the events giving rise to the Indictment – and because of those events – the Fresno Police Department fired the defendants. Each defendant voluntarily appealed his termination to the Fresno Civil Service Board (Board), resulting in four separate reinstatement hearings. Procedurally, each hearing closely resembled a trial - witnesses testified and were subject to cross-examination, the hearing officer ruled on evidentiary objections, and the attorneys made opening statements and closing arguments.

Mr. Goyette represented Coleman during his appeal and reinstatement hearing in January 2008. He also represented Van Dalen during his appeal and reinstatement hearing in October 2008.[1]

---

[1] Before the Indictment, the government advised Mr. Goyette that his prior representation of both Coleman and Van Dalen likely created a conflict of interest that, in the government's opinion, would prevent him from representing either defendant in this case.

3

## II. ARGUMENT

The Sixth Amendment right to effective assistance of counsel is implicated when a defendant retains counsel with potential or actual conflicts of interest. Wheat v. United States, 486 U.S. 153, 159-60 (1988); Thomas v. Mun. Court of Antelope Valley J.D., 878 F.2d 285, 288 (9th Cir. 1989). Inherent in the right to effective assistance of counsel is the "right to be represented by counsel whose loyalties are undivided." United States v. Allen, 831 F.2d 1487, 1493 (9th Cir. 1987). Indeed, as the Ninth Circuit has noted, "few aspects of our criminal justice system are more vital to the assurance of fairness than the right to be defended by counsel . . . not burdened by a conflict of interest." United States v. Henke, 222 F.3d 633, 638 (9th Cir. 2000) (per curiam).

The government has an affirmative duty to notify the Court of the existence of a conflict of interest. Once the Court is aware of such a conflict, it has an obligation to determine whether the conflict requires disqualification. See Wheat, 486 U.S. at 160; Alberni v. McDaniel, 458 F.3d 860, 870 (9th Cir. 2006) ("If the trial court fails to make such an inquiry into the potential conflict, reversal is automatic."). The necessity to "investigate potential conflicts arises in part from the legitimate wish of district courts that their judgments remain intact on appeal." Wheat, 486 U.S. at 161.

Disqualification is an appropriate remedy in cases involving actual conflicts and in the "more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." Wheat, 486 U.S. at 162-63

4

(recognizing that actual conflicts before trial are "rare"). Although a defendant may attempt to waive his right to conflict-free counsel, such a waiver is by no means absolute.[2] Id. at 160. The Court has an "independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and . . . appear fair to all who observe them." Id. For these reasons, the Court has "substantial latitude" in refusing a waiver and disqualifying counsel, and such a decision will be reviewed only for an abuse of discretion. Id.

> A. Counsel's Successive Representation Creates Serious Actual and Potential Conflicts of Interest that Require Disqualification

In light of Mr. Goyette's former representation of Van Dalen during Van Dalen's reinstatement hearing, the Court should exercise its discretion to disqualify him from this case. Counsel's successive representation of Coleman and Van Dalen creates a conflict that "[endangers] the fact and the appearance of total professional commitment," Trone v. Smith, 621 F.2d 994, 998-99 (9th Cir. 1980), and would deny the defendants a fair trial, Thomas, 878 F.2d at 288.

In cases of successive representation, conflicts of interest arise when there is a "substantial relationship" between the subject matter of the two representations. Thomas, 878 F.2d at 288. A "substantial relationship" exists if the factual contexts are similar or related. Id. Here, the facts underlying the two

---

[2] As set forth below, the government is unaware of any waiver by Coleman or Van Dalen, who also has the right not to have confidential information used against him.

5

representations are more than just related – they are identical and inexorably linked. Disqualification avoids placing counsel in the untenable position of opposing a former client about the very subject of his prior representation.

"The interest to be preserved by preventing attorneys from accepting representation adverse to a former client is the protection and enhancement of the professional relationship in all of its dimensions." Thomas, 878 F.2d at 289. The most important aspect of that relationship is the "preservation of secrets and confidences communicated to the lawyer by the client." Id. Under California law, an attorney has a duty "[t]o maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client." Cal. Bus. & Prof. Code § 6068(e).

Disqualification, however, does not require actual *use* of a former client's confidences against that client. Thomas, 878 F.2d at 289 n.4. The Ninth Circuit has specifically observed that "[t]he *mere possession* of a . . . codefendant's privileged communications poses the precise potential for conflict that [a] trial court ha[s] the discretion to avoid." United States v. Wheat, 813 F.2d 1399, 1402 (9th Cir. 1987) (emphasis added), aff'd by 486 U.S. 153 (1988). "Standing alone, this potential for disclosure of confidential communications might be sufficient basis for a conflict-of-interest finding." Thomas, 878 F.2d at 289-90; see also Trone, 621 F.2d at 1001 ("Because of the sensitivity of client confidence and the profession's institutional need to avoid even the appearance of a breach of confidence, disqualification is required when lawyers change

sides in factually related cases.").

When an attorney attempts to represent his client free of compromising loyalties, and at the same time preserve the confidences communicated by a former client during a substantially related matter, a conflict arises. "[T]he evil . . . . is in what the advocate finds himself compelled to refrain from doing, not only at trial but also as to possible pretrial plea negotiations and in the sentencing process." Holloway v. Arkansas, 435 U.S. 475, 489 & 490 (1978). A defendant should expect that his counsel will "use every skill, expend every energy, and tap every legitimate resource in the exercise of independent professional judgment" in defending him against criminal charges. Thomas, 878 F.2d at 289.

Given counsel's prior representation of Van Dalen, he cannot ethically advise Coleman – or approach the government on Coleman's behalf – about any potential plea offer that would involve Coleman's cooperation and testimony against Van Dalen. See In re Grand Jury Investigation, 563 F.2d 652, 657 (4th Cir. 1977) (holding that "[p]rofessional ethics prevent [an attorney] from advising a [client] to seek . . . leniency when the quid pro quo is testimony damning to his other clients"); see also Holloway, 435 U.S. at 490 (observing that conflicts "may well . . . . preclude[] defense counsel . . . from exploring possible plea negotiations and the possibility of an agreement to testify for the prosecution"). As one district court has explained, it requires but "a statement of the obvious" to realize that such negotiations cannot properly be conducted by the attorney who previously represented the very person who will be hurt by the

resulting testimony.  In re Grand Jury Investigation, 436 F. Supp. 818, 821 (W.D. Pa. 1977).  For this reason, the government has refrained from engaging in plea discussions with Coleman, to his potential detriment.  See Henke, 222 F.3d at 638 (reversing defendant's conviction where his attorney also represented co-defendant who pleaded guilty and agreed to testify at trial). Counsel's inability to engage in plea negotiations creates an actual conflict that requires disqualification.  See United States v. Rodriques, 347 F.3d 818, 824 (9th Cir. 2003) (explaining that the phrase "'actual conflict' is a term of art defined by reference not to the nature of the alleged conflict itself, but to the effect of the conflict on the attorney's ability to advocate effectively"); United States v. Hall, 200 F.3d 962, 966 (6th Cir. 2000) ("[A] conflict of interest was evident [by defense counsel's] failure to successfully negotiate a plea agreement.").

Such ethical issues are only exacerbated in the event the defendants go to trial.  At trial, counsel may have to cross-examine his former client, Van Dalen, which would result in an immediate conflict.[3]  See Wheat, 486 U.S. at 164 (holding that defense counsel, "because of his prior representation of [a witness], would have been unable ethically to provide that cross-examination" of the witness).  Likewise, counsel would likely have to cross-examine government witnesses whose testimony is favorable to one client but not the other, thereby, creating a

---

[3] Although it is unknown whether Van Dalen will testify, he did take the stand in his own defense during his reinstatement hearing.

8

situation of divided loyalties.

There exists a genuine concern that an "attorney who has obtained privileged information from the former client may fail to conduct a rigorous cross-examination for fear of misusing that confidential information." <u>Fitzpatrick v. McCormick</u>, 869 F.2d 1247, 1252 (9th Cir. 1989) (reversing defendant's conviction for ineffective assistance of counsel because his attorney previously represented his co-defendant); <u>see also</u> <u>United States v. Moscony</u>, 927 F.2d 742, 747-48 (3d Cir. 1991) (upholding disqualification because defense counsel could not zealously represent current client through cross-examination, while maintaining confidences of former client); <u>United States v. Kelly</u>, 870 F.2d 854, 857 (2d Cir. 1989) (holding that prior representation of witness prevented defense counsel from conducting vigorous cross-examination). Equally of concern is the possibility that the former client's privileged information will in fact be used against that client, whether directly – through specific questions – or inadvertently – through the shaping of questions and overall trial strategy.

The Court is not required to wait until these serious potential conflicts become actual conflicts at trial. <u>See</u> <u>Wheat</u>, 486 U.S. at 163. Doing so could result in a mistrial, <u>see, e.g.</u>, <u>United States v. Elliot</u>, 463 F.3d 858, 865-67 (9th Cir. 2006) (examining case where district court was forced to declare a mistrial during the defense case when an actual conflict arose), or reversal of conviction, <u>see, e.g.</u>, <u>Fitzpatrick</u>, 869 F.2d at 1252 (reversing conviction because actual conflict at trial denied defendant effective assistance of counsel). The Court,

therefore, should exercise its discretion and disqualify Mr. Goyette at this time.

B.   The Court Should Hold a Hearing to Determine if Any Waiver Is Knowing, Voluntary, and Intelligent

The government is unaware of any waivers of conflict by Coleman and Van Dalen. As both defendants have an interest in conflict-free counsel, they both would need to waive that conflict.[4]

In the event that both defendants execute a waiver, the government would request a hearing to determine if the waivers were knowingly, voluntarily, and intelligently made. Conflicts are difficult for attorneys to understand "and even more difficult to convey by way of explanation to a criminal defendant untutored in the niceties of legal ethics." Wheat, 486 U.S. at 163. Accordingly, a hearing is necessary to ensure that the defendants are fully apprised of all identifiable conflicts, understand the risks and consequences of waiving any conflicts, and freely choose to accept those risks and consequences. See United States v. Schwayder, 312 F.3d 1109 (9th Cir. 2002) (holding, in case involving successive representation, that waivers were invalid because defendant was not sufficiently informed of the consequences of his choice); United States v. Osborne, 402 F.3d 626, 633 (6th Cir. 2005) (holding that

---

[4] California Rule of Professional Conduct 3-310(E) provides that "[a] member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment."

statement that defendant agreed to "waive any conflict which may exist" was insufficient because the defendant was not informed of the types of potential hazards involved in waiving his right to conflict-free counsel); see also United States v. Perez, 325 F.3d 115, 118-19 (2d Cir. 2003) (providing guidance on hearings to determine waiver of conflicts).

In the event of a hearing, the government would also request that the Court make available independent counsel to advise Coleman about the consequences of any waiver. See Wheat, 486 U.S. 163 ("Nor is it amiss to observe that the willingness of an attorney to obtain such waivers from his clients may bear an inverse relation to the care with which he conveys all the necessary information to them.").

### C. The Court Should Refuse Any Waiver to Ensure the Integrity of these Legal Proceedings

The Court should nonetheless disqualify Mr. Goyette, even if Coleman and Van Dalen execute knowing, voluntary, and intelligent waivers. The Court has "an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." Wheat, 486 U.S. at 160; see also United States v. Rewald, 889 F.2d 836, 857-58 (9th Cir. 1989) (affirming district court's decision to reject waiver and disqualify defense counsel). The fairness of these proceedings are called into question by counsel's previous representation of Van Dalen. Counsel obtained confidences from Van Dalen about the very facts at issue in this case and now opposes him, in large degree, as

Coleman's counsel. This situation creates the precise potential for conflict that requires disqualification. See Rewald, 889 F.2d at 857-58.

The Court also has an interest "to be free from future attacks over the adequacy of the waiver . . . and the subtle problems implicating the defendant's comprehension of the waiver." Wheat, 486 U.S. at 160; see, e.g., United States v. Agosto, 675 F.2d 965, 977 (8th Cir. 1982) (holding that defendant's waiver was not valid because defendant's understanding of possible conflicts was centered on the possibility of prior confidential communications between counsel and co-defendants, and not on the possibility of divided loyalties). Conflicts at trial are "notoriously difficult to predict, even for those thoroughly familiar with criminal trials," Wheat, 486 U.S. at 162-63, as was evident in United States v. Newell, 315 F.3d 510, 522 (5th Cir. 2002).

In Newell, the Fifth Circuit reversed the defendant's judgment of conviction because the defendant's waiver before trial did not reach an entirely unforeseen conflict that emerged at trial. Id. The court explained that "a waiver obtained before trial will be valid [only] against conflicts that . . . were sufficiently foreseeable that the judge can bring them home to the defendants in concrete terms." Id. Thus, if a change in circumstances at trial creates a conflict that was not predicted and specifically waived by the defendant, the defendant's conviction could be reversed. See Wheat, 486 U.S. at 163 (explaining that "[a] few bits of unforeseen testimony or a single previously unknown or unnoticed document" could create a

conflict).

Even if every possible conflict is identified before trial, the judgment still may not be secure. The Ninth Circuit has observed that, even with a hearing and valid waiver, an actual conflict could lead to reversal of a defendant's conviction if defense counsel's performance is adversely affected at trial by the conflict. United States v. Partin, 601 F.2d 1000, 1009 (9th Cir. 1979); Alberni v. McDaniel, 458 F.3d 860, 871 (9th Cir. 2006). Moreover, some conflicts simply are unwaivable and require automatic reversal. See United States v. Schwarz, 283 F.3d 76, 96 (2d Cir. 2002) (reversing defendant's conviction, despite defendant's waiver of right to conflict-free counsel, because conflict was unwaivable).

III. CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court disqualify Mr. Goyette from representing Coleman.

Respectfully submitted,

| BENJAMIN B. WAGNER | THOMAS E. PEREZ |
| United States Attorney | Assistant Attorney General |

By: /s/ Kevin P. Rooney        By: /s/ Benjamin J. Hawk
    KEVIN P. ROONEY                Benjamin J. Hawk
    Assistant U.S. Attorney        Trial Attorney

    /s/ Elana S. Landau
    ELANA S. LANDAU
    Assistant U.S. Attorney

13

| | |
|---|---|
| 1 | <u>CERTIFICATE OF SERVICE</u> |
| 2 | I hereby certify that on November 12, 2010, a copy of the |
| 3 | foregoing pleading was filed electronically. Notice of this |
| 4 | filing will be sent by operation of the Court's electronic filing |
| 5 | system to all parties indicated on the electronic filing receipt. |
| 6 | Parties may access this filing through the Court's system. |
| 7 | |
| 8 | Respectfully submitted, |
| 9 | <u>/s/ Benjamin J. Hawk</u><br>BENJAMIN J. HAWK |
| 10 | Trial Attorney |