PAUL Q. GOYETTE, SB 137250
GOYETTE & ASSOCIATES, INC.
11344 COLOMA ROAD, SUITE 145
GOLD RIVER, CA 95670
916-851-1900
916-851-1995 facsimile
goyettep@goyette-assoc.com

Attorney for Christopher Coleman

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

CHRISTOPHER COLEMAN,
PAUL VAN DALEN,
SEAN PLYMALE,
MICHAEL MANFREDI,

Defendants.
_____/

CR. NO. 1:10-cr-417-AWI

**DEFENDANT COLEMAN'S OPPOSITION TO GOVERNMENT'S MOTION TO DISQUALIFY HIS DEFENSE COUNSEL**

The Defendant, CHRISTOPHER COLEMAN, by and through his counsel, PAUL Q. GOYETTE, hereby opposes the government's motion to disqualify defense counsel. The government maintains that counsel's successive representation creates serious actual and potential conflicts of interest that require disqualification. More specifically that, (1) given counsel's previous representation of Paul Van Dalen, he cannot ethically advise Coleman - or approach the government on Coleman's behalf - about any POTENTIAL plea offer that would involve Coleman's cooperation and testimony against Van Dalen, (2) counsel MAY have to cross-examine his former client, Van Dalen, which would result in an immediate conflict, (3) counsel would LIKELY have to cross-examine government witnesses whose testimony is favorable to one client but not the other, creating a situation of divided loyalties, (4) there is a POSSIBILITY the former client's privileged information will be used against him, (5)

DEFENDANT COLEMAN'S OPPOSITION TO
GOVERNMENT'S MOTION TO DISQUALIFY DEFENSE COUNSEL

1

the government is unaware of any waivers of conflict by Coleman and Van Dalen, and (6) even in the event of knowing, voluntary, and intelligent waivers, the situation creates the POTENTIAL for conflict that requires disqualification.

The Defendant contends that counsel's successive representation of himself and Van Dalen does not create any serious or potential conflicts of interest for the following reasons:

1. A criminal defendant has a Sixth Amendment right to counsel of his choice that can only be overcome by demonstration of actual conflict or a showing of serious potential for conflict;

2. Coleman does not possess any information that could be used as testimony against Van Dalen, therefore there is no possibility of a plea agreement;

3. The government's assumption that Van Dalen disclosed confidential information to counsel that could be used against him is erroneous;

4. Van Dalen and Coleman have each made knowing, voluntary, and intelligent waivers; and

5. There is no conflict when the defenses of co-defendants are not adverse to one another.

For the foregoing reasons, as will be discussed in detail below, the government's motion to disqualify defense counsel should be denied.

## I. **INTRODUCTION**

On October 7, 2010, the defendants Coleman and Van Dalen were charged with violations of 18 U.S.C. §242 (Deprivation of Rights Under Color of Law). Defendants Plymale and Manfredi were charged by way of indictment with violations of 18 U.S.C. §4 (Misprison of a Felony). All defendants were charged with violating 18 U.S.C. §1519 (Obstruction of Justice). The charges stem from an incident where

the defendants responded after a second 911 call from the girlfriend of R.C. The second call came as "zero priority," meaning that a potentially life-threatening crime was in progress. In the first 911 call, the girlfriend indicated that she was being assaulted by R.C. Fresno police officers were dispatched to the location, however, they were unable to locate R.C. who had fled when the call was made. The responding officers counseled the girlfriend, telling her to lock the doors and to call 911 again if there were any further problems. A short time later, the girlfriend called again and informed the 911 operator that R.C. was back, was trying to break into the house, and had already broken a window in his attempts. When officers arrived, R.C. had again fled.

Officer Plymale, a canine officer, was the first to locate R.C. several blocks away from the location. Plymale instructed R.C. to sit on the curb. R.C. squatted down as if he was going to sit, then took off running. Plymale informed R.C. to stop or he was going to release the dog. R.C. did not comply and the dog was released. Once the dog attached to R.C.'s leg, he still did not comply, but instead continued over an 6-foot barbed wire topped fence. Coleman arrived at the scene and saw Plymale standing on the west side of the 6-foot barbed wire cyclone fence enclosing the factory yard. Plymale was holding a taser whose wires stretched through the fence and attached to R.C. R.C. was on the opposite side of the fence beating Tymo attempting to gain release. Plymale was able to release the dog from R.C. who was continuing to fight the dog. Plymale took his dog a short distance away from R.C.'s location to calm and tend to his dog who he thought was bleeding. Officers Coleman and Van Dalen were left to deal with the combative and noncompliant R.C., and were required to use force to subdue his arrest. Sergeant Manfredi arrived at the end of the incident and did not personally witness any events other than being in the location of the car driven by Coleman.

Following the incident, and without any formal investigation, Fresno Police Chief, Jerry Dyer announced to the media that the officers would be fired. The

officers were subsequently terminated and appealed their terminations to the Fresno Civil Service Board. Coleman and Van Dalen were both represented by attorney Goyette at separate hearings. Richard Anthony, a highly respected arbitrator, presided over a hearing from January 28 through January 31, 2008. After hearing all the evidence, Mr. Anthony, an independent third party, reversed the decision of the Department and recommended that Officer Coleman be reinstated.

Nonetheless, on August 28, 2008, the City's Civil Service Board chose not to adopt Mr. Anthony's findings and upheld the termination. In a dissenting opinion, the dissenting board member stated, "I, respectfully, dissent. I would affirm the Hearing Officer's recommended decision in all respects. It is my opinion that the Appellant's decision to utilize the less lethal weapon was a split second decision that, while imperfect, does not warrant as severe a sanction as termination."

## II. ARGUMENT

The protection of a defendant's Sixth Amendment right to secure counsel of his choice in a criminal case has long been recognized by the United States Supreme Court. Over fifty years ago in <u>Powell v. Alabama</u>, 287 U.S. 45, 53 (1932), the Supreme Court stated:

"It is hardly necessary to say that, the right to counsel being conceded, a defendant should be afforded a fair opportunity to secure counsel of his choice."

The Court has reiterated this principle on frequent occasions. (See, <u>Chandler v. Fretag</u>, 348 U.S. 3, 9 [99 L. Ed. 4, 75 S. Ct. 1 (1954)]; <u>Glasser v. United States</u>, 315 U.S. 60, 70 [86 L. Ed. 680, 62 S. Ct. 457 (1942)].)

Most recently, the Court again acknowledged that the Sixth Amendment's guarantee of assistance of counsel comprehends the right to select one's own attorney. The Court also stated that, although this constitutional right is not absolute, it mandates a presumption in favor of accepting a criminal defendant's choice of counsel. (<u>Wheat v. United States</u>, 486 U.S. 153, 159, 164 (1988).) This presumption

means that a trial court may only reject a defendant's chosen counsel by a demonstration of actual conflict or by a showing of a serious potential for conflict. (Id. at 164.) These prescribed means, as the Court noted, support the essential aim of the Sixth Amendment, which is to guarantee an effective advocate for each criminal defendant. (Id. at 159.) As such, when alerted by objection from one of the parties, the trial courts have an independent duty to ensure that criminal defendants receive a trial that is fair and does not contravene the Sixth Amendment. (Id. at 161.)

### A. Disqualifying Counsel Without a Showing of an Actual Conflict or a Serious Potential for Conflict Would Contravene the Defendant's Sixth Amendment Right to a Fair Trial

The government contends that Counsel's successive representation of Coleman and Van Dalen creates serious actual and potential conflicts of interest that require disqualification. However, a thorough read of the government's motion reveals that it merely contains multiple pages of law without any substantial discussion showing this law is actually applicable to the facts of this case. Where there is discussion, it consists of nothing more than speculative assertions and assumptions.

For example, the government asserts that the "actual" conflict is Counsel's inability to ethically advise Coleman, or approach the government on Coleman's behalf, regarding any POTENTIAL plea offer that would involve Coleman's cooperation and testimony against Van Dalen. This claim is flawed for several reasons. First, a potential plea offer assumes Coleman has information that would be useful to the government to use against Van Dalen, which he does not. Second, this lack of any damaging information has been made clear by Coleman's previous testimony at the reinstatement hearing. Third, the government has not refrained from engaging in plea discussions based on Counsel's previous representation of Van Dalen. Prior to indictment, the government discussed with Counsel the possibility of Coleman being interested in some form of plea deal. At that time, Counsel informed the government that Coleman had nothing that would help them. In response, the government informed Counsel, that if Coleman chose not to cooperate,

he might be indicted.

The government makes reference that the phrase "actual conflict" is a term of art defined by reference not to the nature of the alleged conflict itself, but to the effect of the conflict on the attorney's ability to advocate effectively. They then cite case law where the court stated, "A conflict of interest was evident by defense counsel's failure to successfully negotiate a plea agreement." By this statement, the government infers that the lack of plea agreement is the fault of Counsel rather than the reality that Coleman has no information to offer against Van Dalen. It appears the government is refusing to accept that Coleman was truthful at his reinstatement hearing, or they are being unethical by insisting he change from his prior testimony in order to assist them in their prosecution and avoid prosecution himself.

The government further asserts that these ethical issues are exacerbated because Counsel MAY have to cross-examine his former client Van Dalen, and this would result in an immediate conflict. This assertion by the government is also flawed by speculation and assumption. First, the government speculates that Counsel would have to cross-examine Van Dalen, and if so he could not do it effectively. This is based on the assumption that counsel has obtained some secret, confidential information from Coleman or Van Dalen, which he has not. Second, the government makes a point of stating that the two representations are more than just related, they are identical and inexorably linked. Counsel does not disagree. In fact, this similarity lends supports to Counsel's contention that he is not privy to any confidential information. If Counsel had been entrusted with any damaging confidential information, from either client, it would have existed when he previously represented both defendants at their reinstatement hearings.

In essence, instead of acknowledging that Counsel's previous successful representation of both clients demonstrates the lack of any ethical issues, the government is implying that not only is Counsel acting unethically now, he was also unethical in the prior representation. This type of unfounded accusation is simply

unacceptable.

As previously stated, the trial court must recognize a presumption in favor of a defendant's counsel of choice and a duty to ensure that criminal defendant's receive a fair trial. (Wheat, at p. 161.) Here, the defendant, Christopher Coleman, would hardly receive a fair trial if this Court buys into the highly speculative and unreasonable allegations of conflict by the government that are without foundation and are little more than a vehicle to avoid facing a successful advocate. "District Courts must be allowed substantial latitude to evaluate in the light of their informed judgment the facts and circumstances of each case, including any attempt by the Government to 'manufacture' a conflict to prevent a defendant from obtaining particularly able counsel." (Id. at 164.) Here, Counsel has proven success in the representation of Coleman and Van Dalen.

**B.  Counsel's Subsequent Representation of Coleman is Well Within the Guidelines Established by the California Rules of Professional Conduct**

As noted by the government, the Wheat court stated that the Court has an "independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and . . . appear fair to all who observe them." (Wheat, 486 U.S. at 163.) As this court will see below, Counsel's subsequent representation of the defendants is not only well within the ethical standards of the profession, Counsel has gone above and beyond to ensure his representation is ethical.

The California Rules of Professional Conduct, Rule 3-310 (B) provides in pertinent part: "A member shall not accept or continue representation of a client without providing written disclosure to either client where:

(1) The member has a legal, business, financial, professional, or personal relationship with a party or witness in the same matter; or

(4) The member has or had a legal, business, financial, or professional

interest in the subject matter of the representation."

The Advisory Notes following this section clarify that Paragraph (B) is not intended to require either the disclosure of the new engagement to a former client or the consent of the former client to the new engagement unless paragraph (E) applies. Rule 3-310 (E) provides:

> "A member shall not, without the informed written consent of the client or former client accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment."

Therefore, written waivers are only required when the subsequent representation is adverse to the clients. In People v. Baylis, 139 Cal.App.4th 1054 (2006), the Court stated that, "Professional ethics demand that an attorney avoid conflicts of interest in which duties owed to different clients are in opposition."

Here, Coleman and Van Dalen are not in opposition. They are both defendants in the same action, with essentially the same charges, and neither of their defenses involves implicating the other. In addition, as discussed previously, neither has disclosed confidential information which would be harmful to the other. However, as a precautionary measure, Counsel has obtained informed written waivers from both Coleman and Van Dalen which include the relevant circumstances, any actual and reasonably foreseeable adverse consequences, and to seek the advice of independent counsel before making the waiver. (See Exhibits A & B, attached hereto and incorporated herein as Christopher Coleman's signed waiver and Paul Van Dalen's signed waiver.)

This precautionary measure was taken despite the fact that the "informed written consent" requirement of Rule 310 (E) does not literally apply here. The State Bars Standing Committee on Professional Responsibility and Conduct has indicated that the fact that a court presumes that counsel possesses material confidential

information due to a substantial relationship between two representations does not necessarily mean that absent consent the counsel is subject to discipline under Rule 3-310 (E), because the rule requires the actual possession of confidential information. (Cal. State Bar, Com. On Prof. Responsibility Ethics Opn. No. 1998-152, at p. 8, fns. 7 & 8.; People v. Baylis, 139 Cal.App.4th 1054, 1066.)

In addition, the Baylis court stated, "Where confronted with an actual and substantial conflict of interest involving Counsel's duty of confidentiality to a former client, a trial court may exercise its discretion to disqualify the conflicted attorney absent an informed waiver from the former client. (Baylis. at p. 1066.) Therefore, it stands to reason that when there is no conflict of interest AND counsel has obtained written waivers from the clients, as Counsel has here, the need to disqualify Counsel is virtually non-existent. (Id.)

### C. The Governments Request that the Court Refuse Any Waiver to Ensure the Integrity of these Legal Proceedings is Inappropriate

The government is trying to induce the Court into adopting the "irrefutable presumption doctrine" for disqualification of counsel. The irrefutable presumption doctrine was developed in federal civil cases to protect the attorney-client privilege. The doctrine is not applicable unless there are adverse interests and is not applicable if no confidential communications were made. In addition, this automatic disqualification doctrine for possible conflict was expressly rejected in Cuyler v. Sullivan, 446 U.S. 335, 348 (1980).

As established above, Counsel has not obtained any adverse confidences from Coleman or Van Dalen, and the government has failed to show any legitimate actual or potential conflict of interest.

The government further contends that this court should deny the defendant's waivers because of the potential of reversal of a conviction. This argument is without substance. The courts have held that when a defendant is well aware of his interests, his right to an unbiased counsel, his right to seek outside legal advice, and his right

to discuss with the court any dissatisfaction with his appointed counsel, his waiver will not be overturned. (United States v. Martinez, 143 F.3d 1266, 1269 (Ninth Cir. 1998); Garcia v. Bunnell, 33 F.3d 1193, 1197.)

Here, as discussed above, the defendant's have made fully informed waivers. Therefore the government's assertion is unfounded and inappropriate.

### III. <u>CONCLUSION</u>

For the foregoing reasons, the defendant, Christopher Coleman, respectfully requests that the Court deny the government's motion to disqualify defense counsel.

Respectfully Submitted,

/s/
Paul Q. Goyette, Esq.
GOYETTE AND ASSOCIATES, INC.
Attorney of Record for Christopher Coleman

## DECLARATION OF ATTORNEY PAUL Q. GOYETTE

I, Paul Q. Goyette, declare:

1. I am an attorney licensed to practice law in the Eastern District of the Federal District Court of California.

2. I am the attorney of record for Christopher Coleman in U.S. v. Coleman, et al., 1:10CR00417AWI.

3. I have read the facts and law contained in this motion opposing disqualification and believe them to be true and correct to the best of my ability.

I declare the foregoing to be true and correct under penalty of perjury.

Date: 12/13/10
/s/
Paul Q. Goyette, Esq.
Declarant

# EXHIBIT

# A

## WAIVER OF CONFLICT

I, Christopher Coleman, hereby acknowledge that I have carefully read the foregoing letter, informing me that my interests may potentially be in conflict with those of Paul Van Dalen in connection with Goyette & Associates' representation of my interests in connection with defense of Grand Jury Indictment Case No. 1:10-cr-00417-AWI in the United States District Court, Eastern District, Fresno Division. I expressly acknowledge that the current representation by Paul Q. Goyette and Goyette & Associates of my interests and those interests of Mr. Van Dalen through previous representation of Mr. Van Dalen by Goyette and Associates constitutes the representation of potentially conflicting interests, to the extent that my interests and those of Mr. Van Dalen are potentially adverse. I nevertheless knowingly and voluntarily consent to my current representation by Paul Q. Goyette and Goyette & Associates. I further expressly acknowledge that I have been advised that I have the right to seek independent legal counsel in connection with the advisability of waiving said conflict, and that I have had a reasonable opportunity to do so.

Dated: 12-1-2010

Christopher Coleman

# EXHIBIT

# B

## WAIVER OF CONFLICT

I, Paul Van Dalen, hereby acknowledge that I have carefully read the foregoing letter, informing me that my interests may potentially be in conflict with those of Christopher Coleman in connection with Goyette & Associates' representation of Mr. Coleman's interests in connection with defense of Grand Jury Indictment Case No. 1:10-cr-00417-AWI in the United States District Court, Eastern District, Fresno Division. I expressly acknowledge that the current representation by Paul Q. Goyette and Goyette & Associates of Mr. Coleman's interests and those interests of myself through previous representation by Goyette and Associates constitutes the representation of potentially conflicting interests, to the extent that my interests and those of Mr. Coleman are potentially adverse. I nevertheless knowingly and voluntarily consent to such current representation by Paul Q. Goyette and Goyette & Associates of Mr. Coleman. I further expressly acknowledge that I have been advised that I have the right to seek independent legal counsel in connection with the advisability of waiving said conflict, and that I have had a reasonable opportunity to do so.

Dated: 12/8/10

Paul Van Dalen