PAUL Q. GOYETTE, SB 137250
GOYETTE & ASSOCIATES, INC.
11344 COLOMA ROAD, SUITE 145
GOLD RIVER, CA 95670
916-851-1900
916-851-1995 facsimile
goyettep@goyette-assoc.com

Attorneys for Defendant Christopher Coleman

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

          Plaintiff,

v.

CHRISTOPHER COLEMAN,
PAUL VAN DALEN,
SEAN PLYMALE,
MICHAEL MANFREDI,

          Defendants.

_____/

CR. NO. 1:10-cr-00417-AWI

**DEFENDANT COLEMAN'S SUPPLEMENTAL OPPOSITION TO GOVERNMENT'S MOTION TO DISQUALIFY HIS DEFENSE COUNSEL**

## I. INTRODUCTION

The issue raised by the Government's Motion came for hearing in front of the Honorable Judge Anthony Ishii on January 18, 2011. At that time, after a brief discussion of the matter, including a newly raised issue involving co-defendant Michael Manfredi in his request to represent himself, the matter was continued to February 8, 2011. The court requested that the attorneys submit further briefing and new Waiver of Conflict of Interest forms. Attached to this Supplemental Opposition is a Supplemental Conflict of Interest Waiver from Christopher Coleman along with the original Cover Letters and Conflict of Interest Waivers from both Coleman and Paul Van Dalen.

## II. FACTS

On October 7, 2010, Defendants Coleman and Van Dalen were charged by way of Criminal Indictment in this case with violations of 18 U.S.C. §242 (Deprivation of Rights Under Color of Law) and 18 U.S.C. §1519 (Obstruction of Justice). The charges stem from an incident where the Defendants responded after a second 911 call from the girlfriend of R.C. The second call came as "zero priority," meaning that a potentially life-threatening crime was in progress. In the first 911 call, the girlfriend indicated that she was being assaulted by R.C. Fresno police officers were dispatched to the location, however, they were unable to locate R.C. who had fled when the call was made. The responding officers counseled the girlfriend, telling her to lock the doors and to call 911 again if there were any further problems. A short time later, the girlfriend called again and informed the 911 operator that R.C. was back, was trying to break into the house, and had already broken a window in his attempts. When officers arrived, R.C. had again fled.

Officer Plymale, a canine officer, was the first to locate R.C. several blocks away from the location. Plymale instructed R.C. to sit on the curb. R.C. squatted down as if he was going to sit, then took off running. Plymale informed R.C. to stop or he was going to release the dog. R.C. did not comply and the dog was released. Once the dog attached to R.C.'s leg, he still did not comply, but instead continued over an 6-foot barbed wire topped fence. Coleman arrived at the scene and saw Plymale standing on the west side of the 6-foot barbed wire cyclone fence enclosing the factory yard. Plymale was holding a taser whose wires stretched through the fence and attached to R.C. R.C. was on the opposite side of the fence beating Tymo attempting to gain release. Plymale was able to release the dog from R.C. who was continuing to fight the dog. Plymale took his dog a short distance away from R.C.'s location to calm and tend to his dog who he thought was bleeding. Officers Coleman and Van Dalen were left to deal with the

combative and noncompliant R.C., and were required to use force to subdue his arrest. Sergeant Manfredi arrived at the end of the incident and did not personally witness any events other than being in the location of the car driven by Coleman.

Following the incident, and without any formal investigation, Fresno Police Chief, Jerry Dyer announced to the media that the officers would be fired. The officers were subsequently terminated and appealed their terminations to the Fresno Civil Service Board. Coleman and Van Dalen were both represented by attorney Goyette at separate hearings. Richard Anthony, a highly respected arbitrator, presided over a hearing from January 28 through January 31, 2008. After hearing all the evidence, Mr. Anthony, an independent third party, reversed the decision of the Department and recommended that Officer Coleman be reinstated.

Nonetheless, on August 28, 2008, the City's Civil Service Board chose not to adopt Mr. Anthony's findings and upheld the termination. In a dissenting opinion, the dissenting board member stated, "I, respectfully, dissent. I would affirm the Hearing Officer's recommended decision in all respects. It is my opinion that the Appellant's decision to utilize the less lethal weapon was a split second decision that, while imperfect, does not warrant as severe a sanction as termination."

### III. ARGUMENT

As provided in Defendant Coleman's original opposition, the protection of a Defendant's Sixth Amendment right to secure counsel of his choice in a criminal case has long been recognized by the United States Supreme Court. Over fifty years ago in Powell v. Alabama, 287 U.S. 45, 53 (1932), the Supreme Court stated:

"It is hardly necessary to say that, the right to counsel being conceded, a defendant should be afforded a fair opportunity to secure counsel of his choice."

The Court has reiterated this principle on frequent occasions. (See,

1   Chandler v. Fretag, 348 U.S. 3, 9 [99 L. Ed. 4, 75 S. Ct. 1 (1954)]; Glasser v.

2   United States, 315 U.S. 60, 70 [86 L. Ed. 680, 62 S. Ct. 457 (1942)].) Most

3   recently, the Court again acknowledged that the Sixth Amendment's guarantee of

4   assistance of counsel comprehends the right to select one's own attorney. The

5   Court also stated that, although this constitutional right is not absolute, it mandates

6   a presumption in favor of accepting a criminal defendant's choice of counsel.

7   (Wheat v. United States, 486 U.S. 153, 159, 164 (1988).) This presumption means

8   that a trial court may only reject a defendant's chosen counsel by a demonstration

9   of actual conflict or by a showing of a serious potential for conflict. (Id. at 164.)

10   These prescribed means, as the Court noted, support the essential aim of the Sixth

11   Amendment, which is to guarantee an effective advocate for each criminal

12   defendant. (Id. at 159.) As such, when alerted by objection from one of the parties,

13   the trial courts have an independent duty to ensure that criminal defendants

14   receive a trial that is fair and does not contravene the Sixth Amendment. (Id. at

15   161.)

16       Overcoming Defendant Coleman's Sixth Amendment right to counsel of his

17   choice is a burden the Government is unable to meet. Defendant Coleman will not

18   receive a fair trial without representation by Paul Q. Goyette. Mr. Goyette has

19   dedicated five (5) years of work to this matter. He has extensive knowledge of

20   this case and a new attorney will neither be able to adequately represent Coleman

21   nor dedicate the time needed to know the case as well as Mr. Goyette.

22   Additionally, over the past five (5) years of handling this case, Mr. Goyette has yet

23   to come across an instance where the interests of Coleman and Van Dalen are

24   conflicting or potentially conflicting. Further, Coleman sought the independent

25   legal advice of Roger Litman following the hearing on January 18, 2011. He has

26   been provided adequate time to fully understand the potential legal ramifications

27   of his decisions and has nonetheless consented to and expressed his desire to have

28   Paul Q. Goyette as his attorney of record.

1    As to the report writing, Defendant Coleman does not need in any way,
2    shape, or form, to employ a blame-shifting strategy. Coleman wrote in his report
3    of what happened and what he saw. Coleman takes responsibility for his report
4    and the contents of his report. Defendant Van Dalen had absolutely nothing to do
5    with the authorship or approval of Officer Coleman's report, and likewise,
6    Defendant Coleman had absolutely nothing to do with the authorship or approval
7    of Officer Van Dalen's report. Additionally, there exists no
8    supervisor/subordinate relationship between Coleman and Van Dalen in which a
9    conflict may arise.

10    Lastly, the U.S. Attorney has previously been told that there could be no
11    plea negotiations in this case. Any plea bargain negotiation process has failed, not
12    as a result of any potential concern on the part of Coleman regarding testimony
13    about Van Dalen in this case, but rather because Defendant Coleman steadfastly
14    refuses to accept any plea bargain because he has done nothing wrong. (If the
15    Government was so confident that Defendant Coleman had beneficial information
16    or blame shifting information concerning co-defendant Van Dalen, they, of course,
17    could have granted Coleman immunity, and subpoenaed him to testify in front of
18    the Grand Jury. They chose not to do that.)

### IV. Conclusion

20    It is respectfully requested that the court accept the Waivers of the Potential
21    Conflict of Interest by Coleman and Van Dalen that have been submitted as part of
22    this supplemental opposition. Following the hearing on January 18, 2011,
23    Coleman sought the independent advice of attorney Roger Litman and has signed
24    a subsequent Waiver of Conflict of Interest. Additionally, Coleman would be
25    willing to answer any questions that the court may have concerning the issue
26    presented by the Government's motion. (Coleman would request that any
27    discussion of this nature be conducted in chambers without the presence of the
28    Government.)

Finally, allegations as to blame shifting strategies, the inability to conduct effective cross-examination of Van Dalen, or cross-examination of any other favorable witnesses are without merit. They are simply allegations that have <u>not been supported by any facts</u> presented by the government. It is respectfully requested that the court inquire of the Government what <u>specific facts</u> they can point to that support their contentions of actual conflict of interest. Blame shifting strategies are not required, appropriate, or necessary in this case. This is for the reasons stated above. In an effort not to lessen the burden of the Government on their case, Paul Q. Goyette is willing to explain more in detail the facts of this case or answers questions concerning the facts of this case that the court may have in chambers without the presence of the Government.

Respectfully Submitted,

/s/
_____
Paul Q. Goyette, Esq.
GOYETTE AND ASSOCIATES, INC.
Attorney of Record for Christopher Coleman

## **DECLARATION OF ATTORNEY PAUL Q. GOYETTE**

I, Paul Q. Goyette, declare:

1.   I am an attorney licensed to practice law in the Eastern District of the Federal District Court of California.

2.   I am the attorney of record for Christopher Coleman in U.S. v. Coleman, et al., 1:10-cr-00417-AWI.

3.   I have read the facts and law contained in this supplemental opposition to the Government's disqualification motion and believe them to be true and correct to the best of my ability.

I declare the foregoing to be true and correct under penalty of perjury.

Date: 2/1/11

/s/ _____
Paul Q. Goyette, Esq.
Declarant

## SUPPLEMENTAL CONFLICT OF INTEREST WAIVER

I, Christopher Coleman, hereby acknowledge that I have carefully read the original Conflict of Interest letter and Waiver dated December 7, 2010, informing me that my interests may potentially be in conflict with those of Paul Van Dalen in connection with Goyette & Associates' representation of my interests in connection with defense of Grand Jury Indictment Case No. 1:10-cr-00417-AWI in the United States District Court, Eastern District, Fresno Division.

I expressly acknowledge that the current representation by Paul Q. Goyette and Goyette & Associates of my interests and those interests of Mr. Van Dalen through previous representation of Mr. Van Dalen by Goyette and Associates constitutes the representation of potentially conflicting interests, to the extent that my interests and those of Mr. Van Dalen are potentially adverse. I nevertheless knowingly and voluntarily consent to my current representation by Paul Q. Goyette and Goyette & Associates.

I further expressly acknowledge that I have been advised that I have the right to seek independent legal counsel in connection with the advisability of waiving said conflict, and have sought the independent advice of Roger Litman. Mr. Litman has advised me of the possibility of conflicts of interests arising and the potential repercussions of those conflicts.

Specifically, I acknowledge that both Paul Q. Goyette and Roger Litman have advised me of potential conflicts regarding plea negotiations and bargaining, sentencing and sentencing guidelines, effective direct- and cross- examination, use of discovery and information obtained, and trial strategy. With these potential conflicts in mind, I nonetheless consent and desire to have Paul Q. Goyette of Goyette & Associates be my attorney of record in defense of the Grand Jury Indictment.

I believe that I will not receive a fair trial without representation by Paul Q. Goyette and Goyette & Associates. Mr. Goyette has dedicated five (5) years of work to this matter. He has extensive knowledge of both this case and the defense of law enforcement personnel, and I believe a new attorney will neither be able to adequately represent me nor dedicate the time needed to know the case as well as Mr. Goyette. I believe the Conflict of Interest Motion brought by the Prosecution is an attempt to gain an advantage in order to obtain a conviction against me by excluding the sole attorney with the best ability to represent me. Further, I believe that the recusal of Paul Q. Goyette as my attorney of recusal will countermand my Sixth Amendment to counsel of my choice.

Dated: 2-1-2011

Christopher Coleman



Paul Q. Goyette
Gary G. Goyette
Stephen V. Palazzo
Daniel P. Thompson
Rafael Ruano
Joy C. Rosenquist
John C. McCaslin
Frances Gianuario
Eric Acevedo
Joanne M. Norloch

Mark R. Swartz
Of Counsel
Personal Injury

Labor Representatives:
Steve Allen
Paul Konsdorf
Luciano Beltran
Kim Gillingham
David French
Paul Heckman
Tim Cantillon
Terry Cazzell

**Goyette**
& ASSOCIATES, INC.
*attorneys at law*

SACRAMENTO OFFICE
11344 COLOMA ROAD
SUITE 145
GOLD RIVER, CA 95670

(916) 851-1900
TOLL FREE (888) 993-1600
FACSIMILE (916) 851-1995

INFO@GOYETTE-ASSOC.COM

December 7, 2010

<u>Via Email Transmission at chris@ttrsubstations.com and U.S. Mail</u>

Christopher Coleman
2772 E. Quincy
Fresno, CA 93720

    Re:    Waiver of Conflict of Interest

Dear Chris:

    Goyette & Associates currently represents you as a client of this firm in connection with defense of Grand Jury Indictment Case No. 1:10-cr-00417-AWI in the United States District Court, Eastern District, Fresno Division ("Indictment"). We understand that Paul Van Dalen is also a party to the Indictment with interests adverse or potentially adverse to you. As you know, we have previously represented Mr. Van Dalen in previous proceedings stemming from the incidents which are the basis for the Indictment. However, we will not be representing Mr. Van Dalen in his defense of the Indictment.

    While we do not anticipate that this situation will adversely affect our representation of the you in your defense of the Indictment, applicable rules of professional conduct require that we obtain your consent to our representation where such representation is adverse or potentially adverse to a former client of the firm. We therefore ask that the you acknowledge your express and informed consent to our representation of you in the Indictment defense in light of our previous representation of Mr. Van Dalen.

    As my former client, Mr. Van Dalen is entitled to expect confidentiality and loyalty from me in connection with those matters in which I represented him. Because you have asked me to represent you in a substantially related matter, I am now representing you in a matter that is adverse or potentially adverse to a former client of mine and is related to my prior representation of that client. This creates a potential conflict of interest.

    In making the decision whether to waive any conflict, you should be aware that, by virtue of my prior representation of Mr. Van Dalen, the law presumes that I may have confidential information about Mr. Van Dalen that may be relevant and useful in my representation of you. In

representing you, I will not be permitted to disclose or use any information I may have about you to Mr. Van Dalen. The waiver of the conflict simply allows me to represent you in this matter. I do not believe that my obligations to Mr. Van Dalen impair my ability to represent you in this matter, however, and I will represent you to the best of my ability.

Although I am asking you to agree to waive this conflict of interest, you are not required to do so. If you change your mind and do not agree to waive this conflict, I will not be able to represent you in this matter. I am happy to answer any further questions you might have about this matter. If you would be more comfortable consulting with another lawyer about this conflict waiver, please do so. You are not however, required to speak with another lawyer – it is simply your choice to make. If you do agree to waive this conflict, please sign this letter and return it to me.

By giving your consent, you acknowledge that we have made full disclosure to you of the facts and circumstances surrounding any conflict of interest or potential conflict which may exist now or in the future with regard to our firm's previous representation of Mr. Van Dalen.

I look forward to working with you in connection with this matter.

Very truly yours,

Goyette & Associates, Inc.
A Professional Law Corporation

Paul Q. Goyette

PQG/bs

## WAIVER OF CONFLICT

I, Christopher Coleman, hereby acknowledge that I have carefully read the foregoing letter, informing me that my interests may potentially be in conflict with those of Paul Van Dalen in connection with Goyette & Associates' representation of my interests in connection with defense of Grand Jury Indictment Case No. 1:10-cr-00417-AWI in the United States District Court, Eastern District, Fresno Division. I expressly acknowledge that the current representation by Paul Q. Goyette and Goyette & Associates of my interests and those interests of Mr. Van Dalen through previous representation of Mr. Van Dalen by Goyette and Associates constitutes the representation of potentially conflicting interests, to the extent that my interests and those of Mr. Van Dalen are potentially adverse. I nevertheless knowingly and voluntarily consent to my current representation by Paul Q. Goyette and Goyette & Associates. I further expressly acknowledge that I have been advised that I have the right to seek independent legal counsel in connection with the advisability of waiving said conflict, and that I have had a reasonable opportunity to do so.

Dated: _12 - 1 - 2010_

Christopher Coleman

Paul Q. Goyette
Gary G. Goyette
Stephen V. Palazzo
Daniel P. Thompson
Rafael Ruano
Joy C. Rosenquist
John C. McCaslin
Francesca Gianuario
Eric Acevedo
Joanne M. Narloch

Mark R. Swartz
Of Counsel
Personal Injury

Labor Representatives:
Steve Allen
Paul Konsdorf
Luciano Beltran
Kim Gillingham
David French
Paul Heckman
Tim Cantillon
Terry Cazzell

# Goyette
**& ASSOCIATES, Inc.**
*attorneys at law*

SACRAMENTO OFFICE
11344 COLOMA ROAD
SUITE 145
GOLD RIVER, CA 95670

(916) 851-1900
TOLL FREE (888) 993-1600
FACSIMILE (916) 851-1995

INFO@GOYETTE-ASSOC.COM

December 7, 2010

<u>Via Email Transmission at danidien@aol.com and U.S. Mail</u>

Paul Van Dalen
32952 Burma Lane
Sanger, CA 93657

      Re:     Waiver of Conflict of Interest

Dear Paul:

      By this letter we seek your informed consent that our firm may continue to represent Christopher Coleman in connection with his defense of Grand Jury Indictment Case No. 1:10-cr-00417-AWI in the United States District Court, Eastern District, Fresno Division ("Indictment"). We want you to be informed, and consider, the implications, advantages, and risks of doing so. As you will recall, we previously represented you in previous proceedings stemming from the incidents which are the basis for the Indictment. As my former client, you are entitled to expect confidentiality and loyalty from me in connection with those matters in which I represented you. Unless we obtain your consent, we will not continue with the representation of Mr. Coleman.

      In my opinion, no actual conflict exists at this time. This is because you and Mr. Coleman currently share a commonality of interests in defending the Indictment allegations. In the event that any conflict, dispute or disagreement arises between you as to your respective rights and defenses, we shall obtain further waivers from you and Mr. Coleman or decline to further represent Mr. Coleman in any manner in connection with that dispute or disagreement. Again, there are various ways in which a future conflict of interest could arise. For example, Mr. Coleman may wish for us to pursue a defense which would adversely affect the interests of you. However, we do not believe there is likelihood of this to occur. Nevertheless, we will make every effort during the course of representation to confirm that each of you have a commonality of interests in connection with the positions asserted.

You should be aware that, by virtue of my prior representation of you in a substantially related matter, I may have confidential information that may be relevant and useful in my representation of Mr. Coleman. Because of the relatively straightforward nature of this matter and my prior representation of you, I do not believe that any information I may have gained in representing you in the past poses a substantial risk to you now, but you should consider the issue. Your agreement to waive this conflict does not permit me to disclose any information I may have about you to Mr. Coleman but instead simply allows me to represent Mr. Coleman in this matter; I will not disclose any such information without your informed consent nor will I use such information in my representation of Mr. Coleman. You should also understand that my job is to represent Mr. Coleman's interests in this matter and, because you are not my client, I am very limited in the types of questions I can answer for you. I cannot give you legal advice, and I urge you to seek the advice of another lawyer if you have questions about whether it is a good idea to sign this conflict waiver.

Although I am asking you to agree to waive this conflict of interest, you are not required to do so. If you change your mind and do not agree to waive this conflict, I will not be able to represent Mr. Coleman. If you do agree to waive this conflict, please sign this letter and return it to me. By executing this letter where indicated below, you confirm that you have been fully informed as to the nature of the potential conflicts which arise as a result of our current representation of Mr. Coleman, that you have been provided a reasonable opportunity to seek the advice of independent counsel of your choice regarding these potential conflicts and waiver thereof; and you understand that a conflict may arise in the future which may require an additional disclosure and waiver by you, or, alternatively, withdrawal by this firm of representation of Mr. Coleman.

Assuming the foregoing accurately reflects your agreements, please execute and return to me the waiver form appended hereto. Of course, if you have any questions or comments, please feel free to give me a call.

Very truly yours,

Goyette & Associates, Inc.
A Professional Law Corporation

Paul Q. Goyette

PQG/bs

## WAIVER OF CONFLICT

I, Paul Van Dalen, hereby acknowledge that I have carefully read the foregoing letter, informing me that my interests may potentially be in conflict with those of Christopher Coleman in connection with Goyette & Associates' representation of Mr. Coleman's interests in connection with defense of Grand Jury Indictment Case No. 1:10-cr-00417-AWI in the United States District Court, Eastern District, Fresno Division. I expressly acknowledge that the current representation by Paul Q. Goyette and Goyette & Associates of Mr. Coleman's interests and those interests of myself through previous representation by Goyette and Associates constitutes the representation of potentially conflicting interests, to the extent that my interests and those of Mr. Coleman are potentially adverse. I nevertheless knowingly and voluntarily consent to such current representation by Paul Q. Goyette and Goyette & Associates of Mr. Coleman. I further expressly acknowledge that I have been advised that I have the right to seek independent legal counsel in connection with the advisability of waiving said conflict, and that I have had a reasonable opportunity to do so.

Dated: 12/8/10

Paul Van Dalen